Thank you, your honors, and may it please the court, Ben Winograd on behalf of Petitioner-Elfido The primary questions before the court at this point in the case are whether Venue lies in the circuit, and if not, whether the case should be transferred to a different circuit. I'm happy to address the arguments in that order, but I would like to preface them with two caveats. First, the court may not need to actually decide whether Venue lies in the circuit. By analogy, in cases involving qualified immunity, a court does not need to decide whether the Constitution protects a right if that alleged right was not clearly established. And the same is true here. If the court would retain jurisdiction, even if Venue does not lie in the circuit, the court does not need to decide whether Venue does lie in the circuit. Why would we do that, Mr. Winograd? Why would we keep a case here if we were persuaded we didn't have Venue, and we were persuaded that there was a jurisdiction where Venue properly was laid? Well, that gets to the second question about whether transfer would be warranted in the interest of justice, and I can't turn to that. Well, isn't it always in the interest of justice to obey the law? If we don't have Venue, and some place does have Venue, isn't it proper and right and consistent with the interests of justice for a case to be where Venue is proper, not where Venue is improper? Multiple circuits have held otherwise, Your Honor. Multiple circuits have retained jurisdiction despite lacking Venue. Well, they may have retained jurisdiction, but I invite you to point us to a single case where a court said, hey, it's good. It's better for us to hold on to this one when we don't have Venue. That's a good thing. Well, I don't know that any... Because they think they have to. Certainly, I don't know that any have said that it is a good thing, but certainly the four... Why don't you take it as a given? Just for purposes of argument. Certainly. That one may not have a lot of traction with us. Well, let me just get in on that because Venue can be waived, right? Yes, Venue can be waived. And so are we looking at this in the abstract in terms of where Venue is proper as if there's an objective truth to where it's proper? Or should we begin to think more in terms of if it's waived in a certain space, and that might not be the case here, but if it's waived in a certain space, then it's by definition proper. I don't know if it's waived if it's by definition proper, but certainly if neither party raises an objection to Venue, I think courts have largely felt that they will retain jurisdiction, although they could still respond to a transfer Venue. Was it waived here? It was not waived here. Okay. No, correct. So given that it's not waived here, let's move on to this issue about... Sure. Before we go to... By the way, we can send it. Why don't you just walk us through for a minute how Venue operated before the world of remote hearings became common? Well, before remote hearings became common, Venue was quite simple because the parties and the immigration judge and the immigration court were all in one place. This entire mess, as it were, has arisen because the Justice Department started spreading remote hearings out across different circuits, and therein lies the problem that we face today. Okay. Yes. And with that spreading across, does the Justice Department have the opportunity to pick where it wants to go? I mean, maybe I should ask it this way. What was Mr. Castillo's connection with Cleveland, Ohio? No connection whatsoever. The Department of Homeland Security effectively has carte blanche to institute removal proceedings at whatever immigration court it likes to. Okay. The Department of Justice said Cleveland, Ohio is where we're filing. Well, the Department of Homeland Security is the one that... Department of Homeland Security. Yes. Correct. The only connection is that at the time my client was placed in proceedings, the Moe Shannon Valley hearing location was under the authority of the Cleveland Immigration Court. So that is the only connection. That's something they control too as well, right? I mean, I have a letter from, I think it's Venue, saying, hey, they just... Somebody, Department of Justice, somebody said it's no longer this Moe Shannon Valley Correctional Center is no longer going to be under Cleveland. It's going to be under Elizabeth, New Jersey. That's correct, Your Honor. Had my client's case arisen today, there is no question that it would be subject to Third Circuit law. Okay. And tomorrow they could say it's connected to Birmingham, Alabama. They could, but it appears that the agency has made a deliberate choice to no longer do that. When I checked the agency's website last night, and by my reading, they are no longer spreading cases across different circuits. In other words, every hearing location in the United States now appears to be within the same circuit as the Immigration Court with Venue over the proceedings. And that's a development that arose post-Maddox Garcia. And so, yes, in theory the agency could go back to the way it was, but it appears that they've made a deliberate choice not to do that. Okay. So they've decided to, but they could decide differently tomorrow. They could. Okay. For now, at least, it sounds like you're telling us this is a complete, not exactly a one-off, it's a two-off. We have Ms. Muhammad here today. But we have, we're unlikely to, unless the government changes its mind again, we're unlikely to face this same issue again. Is that what you're telling us? That is correct. I think if the court adopts any rule in this case, it would apply to a rapidly diminishing number of cases. That was the point I was attempting to make at the outset. But I'm happy to return to why, to the actual venue issue, and why we think venue is proper in this circuit. And I want to be clear that our argument is not based on the fact that my client was detained at Moshannon Valley. The argument is based on the fact that the agency regarded Moshannon Valley as the actual location of the hearing. In other words, the agency regarded my client as appearing at the hearing in person, and everyone else as appearing by television. That is why the IJ began each hearing by stating that she was hearing the case from or out of Moshannon Valley. And that's why the transcript lists Phillipsburg, Pennsylvania, as the, quote, place of the hearing. Yeah, that's interesting. But why don't you jump in on the First Circuit's case, the Bazille case, because the reason there seems to say it doesn't matter where, not that it doesn't matter, but the question is where are the proceedings concluded? And the hearing is not the proceeding. The hearing is part of the overall proceedings. So it's not, you know, the old not over till the fat lady sings. It's not over till it's over. It's not over till it's really done. And it's not really done until there's a decision filed. And it will be filed in the ordinary course where it began, hence matter of Garcia, and hence Bazille saying it's where the initial filing took place. Now, tell us why that reasoning is wrong and why your focus on where the proceeding is is rooted in the statute and better than what the First Circuit and the case. Sure. Well, I would note that there's a circuit split on this regardless. You have the first and second on one side, the ninth and tenth on the other. So there's no judicial consensus. Well, one of those other cases, isn't Bazille the only one that exists sort of post-Garcia? Also post the world in which these remote hearings are common. Well, the Ninth Circuit's decision in Sauceda was in 2021. So that was at least post-COVID. What about Herrera-Oncala by the Fourth Circuit? That's pretty recent. That is also, yes, that was a case decided in 2022. They, of course, took a different approach. They just looked to the physical location of the IJ. But, yes, that is also a recent decision. But to answer your Honor's question, I think the proceedings are completed wherever the hearing itself took place. I agree that immigration judges complete proceedings by issuing their final decision. But we think the final decision is geographically completed wherever the hearings themselves took place. Why? That's what I'm asking. Why? Why is that logically where things are completed? There's still other stuff to be done before the case is closed, right? No. More often than not, immigration judges issue oral decisions at the conclusion of the hearing itself. In this case, there happened to be a written decision. No summary decision is filed. There's none. Another piece of paperwork that happens after an IJ says, and X. There's nothing in the ordinary course that happens. No, no. Once the decision is issued, either orally or in writing, that is the final decision. That triggers the 30-day period for the notice to appeal. So just to tease this out, if I recall the Texas statute correctly, it says, in the judicial district or circuit in which the IJ completes the proceeding. So we've got the subject being the IJ, the verb being completes, and then the object being proceeding. And so the Fourth Circuit, Herrera-Oncala said, hey, we're going to look at the subject, because we have 1996 amendments that didn't make the proceeding the subject anymore. It made the IJ the subject. The Fourth Circuit says, because the IJ is the subject, we care primarily where the subject is. So you disagree with that, right? Well, I think the IJ placed too much weight on the IJ's physical location as opposed to the IJ's legal location. I think for legal purposes, the IJ is wherever the proceedings themselves are completed. So the weird thing, though, is your answer just flipped the script. It's where the proceedings, making the proceedings the subject, are completed. That's how the statute was written pre-1996. But they flipped it and made the IJ first. Let me posit this. I'm thinking about this. Maybe the ambiguity is with the word completed, because if you said where the author completed the book, the location of the author and the book are the exact same place. If you said where the quarterback completed the pass, it might not be in the location that the quarterback is. Where you completed the wire transfer might not be at the point of origin. And so it strikes me that if we want a huge statutory text, the big word, maybe rather than the grammatical structure of who's the subject, who's the object, is complete. And I guess what's strange to me is under any of that ambiguity for complete, it strikes me that the answers would either be the Sixth Circuit or the Fourth Circuit, because the IJ is in the Fourth Circuit, and the completion of the proceedings would be something docketed in the Sixth Circuit. And so I'm trying to find out, like, how can you give me a definition of complete that takes us to the Third Circuit? Because the Third Circuit is where the agency itself regarded all the proceedings as having taken place. Now, your honors may wonder why then – yes? Don't just give us an assertion. Give us some facts. Why did the agency think that? They filed in Ohio. They didn't file in Pennsylvania. They filed in Ohio. Other than putting Mr. Castillo in Loshanna Valley, why do you say this is where the department, the government, said it is? I would point your honors to a memorandum that we cite in the response to the original show cause called OPPM 0406. That is a memo that was issued by the chief immigration judge in 2004, and it makes clear that where the agency regards the hearing as actually taking place is distinct from the immigration court revenue line. And it also made clear that immigration judges are supposed to put the hearing location in the caption of their decision, not the immigration court. So in this case, the IJ actually miscaptioned her own decision under – So you're telling us that in this world where you acknowledge things are completely different than they used to be, a 2004 memo is what tells us it's where the proceeding, where the respondent, in this case the petitioner, was located. Correct, and the board itself adopted that interpretation in matter of RCR, which is a precedential decision that was issued in 2020. Let me pick up on your distinction you made a few minutes ago between physical location and the legal location. That makes sense to me, and if we just stick with the statute, Section 1229 talks about removal proceedings, and it says they begin with a notice to appear, and that notice to appear, among other things, has to specify the time and place at which the proceedings will be held. That time and place can be changed subsequently through a notice of hearing. It didn't happen here. It could be, but it didn't. So why don't we just look to the notice of hearing, or the notice to appear in the first instance, a notice of hearing if there is one, and that tells us where the time and place is, for legal purposes. I don't care where anyone's happening to be sitting for these things, but for legal purposes, the NTA gives us the answer. Not always, Your Honor, because these NTAs are filled out by ICE officers. There is not a lot of consistency in what's listed in the NTA. Sometimes the NTA will direct the non-citizen to appear at Moshannon Valley. Sometimes it will say Cleveland. The same thing with hearing notices. Sometimes the hearing notices simply list the URL of the WebEx where someone can log into WebEx. I think really what Your Honor should be looking at is what the immigration judge themselves say, and here in my case, the immigration judge herself said three times that she was hearing the case out of Moshannon Valley, and also as I mentioned before, the transcript lists Phillipsburg as the actual place of the hearing. I think that's more authoritative because that's on the back end than what the NTA said on the front end. Why is that any different than what you said a minute ago, that you could have an immigration judge? I mean, they're good, great, and competent people, but, you know, so are the hearing officers. Why should whatever an immigration judge happens to fill out be the determinative point? The immigration judge fills out Moshannon Valley, so Moshannon Valley, and the next day a different immigration judge fills out Cleveland, Ohio. It's Cleveland, Ohio. It's just up to whoever happens to be filling out a form. I don't believe it's up to the whim of the immigration judge. I mean, the immigration judge, frankly, I don't know exactly how it's determined, but clearly it is somewhere in EOR's record in their database what the hearing location is, and that's what the IJ uses when they start each hearing. All this comes back to your assertion that it's the hearing location. How do you tie that to the statute? Because, one, we think proceedings are completed where the hearing actually takes place. If I could also just offer another thought. So proceedings being completed would be different in cases where there is a written thing? No. A hearing could be completed in one place if the judge decides not to file an order, but a hearing would be completed in a different place if the judge does decide to file an order. No. We think the rule should be the same whether the immigration judge issues an oral decision or a written decision. So for your argument, you have to say that completed means where the physical location of the petitioner is, no matter what, because that's where it should be decided. That's where we should assume or conclude that the physical location of the petitioner, as opposed to the physical location of the immigration judge, as opposed to the physical location of the office where the file is filed, that's what's determinative. That's the argument you're making to us. I don't mean to be circling around and around, but I'm trying to figure out where in the statute, like there's three potential locations, and you've got us all kind of asking around this, why do you say, yeah, proceedings are completed where the petitioner happens to be? Why is that as opposed to, as Judge Fitts said, why not where the immigration judge is in Richmond? Why not where the office is in Cleveland? Why? Well, again, it's not where the petitioner is physically located. It's where the agency regards the hearing location as being. So if that's true, Judge Jordan before said, you know, could it be Birmingham, Alabama? So could we have a situation where we have an alien in Pennsylvania, the case files in Cleveland, the IJ in Richmond, and then they say, you know, we just want to just, for whatever reason, our VTC or WebEx works best out of Birmingham. We're going to put the hearing location in Birmingham, and then you would tell us that that's dispositive we're in the 11th Circuit, even if no one had any tie whatsoever there, just because they, there could be a reason. There could be a quirk. They could say, you know, we're doing this on WebEx. We've got a great server in Birmingham, and we want to have the hearing location there, even though no one is there. That would be weird, but under your rule, we would be under the 11th Circuit then, based on the designation of the hearing location. If the agency moved the hearing location, I don't know that the agency can sue a spot to move the hearing location like that, but if they did, then, yes, that would fall under our rule. But let me note, because I think there's some, the only thing that there is consensus about the statute is that it is somewhat ambiguous, and I think the government actually made a point in its letter brief last week that because the venue provision is non-jurisdictional, and everyone agrees on that, it follows that venue could be proper in multiple circuits. And I think if the government is correct, that could mean that venue could be proper in this court, the Fourth Circuit, and the Sixth Circuit. I think the reason why the assumption has been that venue can only lie in one circuit is because Section 1252B2 refers to the circuit in which the immigration judge completed the proceedings. But if you look, there are three other places in Section 1252 where Congress referred to a petition for review filed with, quote, an appropriate court of appeals. That's Section 1252A2D, A4, and A5. And I think that language suggests. If that's the case, why isn't the language that you first quoted where you said, the circuit, the court of appeals, why isn't that actually strengthened as a conclusion by the fact that other provisions use a circuit? It says an appropriate court of appeals. And I think the simultaneous reference to an appropriate court of appeals suggests that Congress believed that venue over petition for review could potentially lie in multiple circuits. I'm reading from 1252B2. It says the petition for review shall be filed with the court of appeals for the judicial circuit. It doesn't say an. It doesn't seem to open it up to, hey, it could be any number of places. It seems to say the, like it's one spot. Right, but as the Supreme Court has said, courts interpret not individual statutes, not individual provisions, but entire statutes. And if you look literally at the paragraph above, you will see three places where Congress referred to an appropriate court of appeals. I'm not making myself clear. Doesn't that distinction that you've just pointed out make it even a stronger inference that when they say in 1252B2, the court of appeals for the circuit, they mean exactly that? We know how to say a and an, and we know how to say the, and in this section we said the, and that means there's a spot, one spot, that's the right venue. I don't think so, Your Honor, because there's only one type of petition for review. And so when Congress refers to a petition for review, yes. But, I mean, I guess my thought is there may be, if your argument is true and it's not singular venue and there's multiple permissible appropriate venues, right, doesn't the language of B kind of solve that when it says which the IJ completes the proceeding? And so there could be a whole bunch of permissible venues, but then the completion part tells us that it's only one. Don't you have to tell us that there would be multiple venues where it could be completed then? And at least if D means nothing else, doesn't it focus on the one in which it was completed, even if at the beginning it could have gone to a bunch of places? I don't think so, because the language that I'm referring to in sections 1252A2D4 and 5 refer to a petition for review filed with an appropriate court of appeals. So it's referring to petitions for review that are actually filed, which by definition can only be – that effectively incorporates 1252B2. I'm just simply raising this issue because courts, as we know, there's a circuit split on this. Different courts have come up with multiple answers, and perhaps the answer is there are – an immigration judge can complete proceedings in multiple circuits at one time. If the agency is going to spread proceedings out across multiple circuits, perhaps the answer is, well, then, a petition for review can be filed in multiple circuits. You mentioned the statute's ambiguous. Does that mean we should be considering any of the administrative deference doctrines, or can we just go ahead and decide ourselves? No, the board itself said in footnote 10 of Maddox-Garcia that it has no authority to interpret section 1252 and has not afforded any deference. Even if Chevron survives the current Supreme Court term, the board itself has disclaimed any deference, and I don't think the government has asked for deference in this case. The one practical benefit of holding that venue could be proper in multiple circuits is that it would give the agency an incentive not to return to its former practice of spreading removal cases across different circuits. All right, thanks. Thank you, Your Honor. We'll have you back on rebuttal, and we'll hear from the government. Good morning. May it please the Court, my name is Kitty Lees, and I'm appearing on behalf of the Attorney General in Castillo v. the Attorney General. As this Court knows, under 8 U.S.C. 1252b2, venue is proper in the court in which the immigration judge completed proceedings and is not jurisdictional. Here, the immigration judge completed proceedings in Cleveland, Ohio, where the Attorney General Well, we know what your position is, so let's dive into this. First, would you agree with Mr. Winograd about how things used to work and how they work now? Yes, there was a definite, I mean, immigration courts have been around for a while, so there was no virtual proceedings for a very long time, and in the age now, it's very common. Understood. Yeah. Yeah, we understand. Now, here's the question. So, a problem that wasn't a problem before now clearly is a problem. As you pointed out in your own letter to us, you know, there's a big difference between what might happen under Sixth Circuit law and what will happen under Third Circuit law, potentially. So, why don't you answer what connection Mr. Castillo had to Cleveland, Ohio? Any at all? The Department of Homeland Security picked that spot, and that was that. Well, the Moshannon Valley Correctional Center is not an immigration court, so there needed to be an immigration court that oversaw the proceedings. Yeah, but it could be Elizabeth, New Jersey, and now it is. Right. So, why Cleveland, Ohio, except for Ohio's next door to Pennsylvania? Right. Well, the agency has the authority to assign the immigration court over various correctional facilities. No question about that. I'm asking, why Cleveland, Ohio? There's no reason why other than— Okay. So, then why isn't the rule the government's pressing for just an invitation for the government to form shop? You can pick. You can see what's going to happen in a case, and you can say, you know what? We don't like Third Circuit law on this stuff. We don't like Third Circuit law generally. This case, we're filing the paperwork in Birmingham, Alabama, and that's that. Well, that— It has nothing to do with the case. Guy's never been to Birmingham in his life, but the Department of Homeland Security likes the 11th Circuit case law. It's going to the 11th Circuit. Why isn't this just like a wide-open door for wherever the government—couldn't do it before, had to get it where everybody was, tended to be where you got the person and have them in jail, but now it's wherever you want, right? I have two responses for that. First, the Department of Homeland Security isn't looking at the case law because the Department of Justice is the one who does the proceedings. The government doesn't talk to each other. Okay, that's one argument. Don't—trust us, we don't talk to each other. What else do you have? The other argument is that here, statute says that it's where the immigration judge completes proceedings. So this court is bound by where the statute says that venue is. Obviously. That's what we're here arguing about. What does that mean? And your argument, and the BIA's argument, and you've got the First Circuit to agree with you, is it's wherever the department happens to pick, wherever the government happens to pick to file paperwork. That's where—wherever that is, that's where it is completed. That's your position now. Explain to us, setting aside the policy concern I've just expressed for a minute, why does that logically follow? Why isn't it the Fourth Circuit position? Or why isn't it where the petitioner happens to be? Why? So the non-petition isn't without any agency here. They're allowed to file a motion to change venue whenever they would like, and they did not do that here. So they filed it in a place where it's inconvenient. They can file a motion to change venue, and the immigration judge can then change— That doesn't seem to answer the question. We're asking a statutory interpretation question, and the fact that somebody might be able to get it changed doesn't answer the statutory interpretation question. So please focus on that. What is it in the statute that makes it logical to say completion is where paperwork was begun? Sure. So in the regulations, it says that jurisdiction is best where the charging document was filed. So that is where proceedings began, and without a formal change of venue, then it naturally follows that proceedings are completed in the same place where they began. Let me just say, because this naturally follows, it's kind of nice because we sit there and say, oh, we'd like a motion, we'd like to change venue, we'd like to do this other thing. But can't we look at the record and say, well, when they say that the location of the proceedings is in X location, when the petitioner shows up in person, shouldn't we look at that and say, well, look, this naturally follows. It starts here. We look at the docket. Nothing's changed. But we can also look at the docket and say, well, why are they doing it in person in the Third Circuit if it's actually really something that's based in the Sixth Circuit? So when you say it naturally follows, it strikes me that we're leaving out parts of the record where it does say that it was in person. That didn't happen in this case, Your Honor. Every notice of hearing in this case, so there's the charging document notice to appear, and there's a notice of hearing which tells the non-citizen where they should appear for the hearing. Picking up on my earlier question, under the statute, why shouldn't we just follow those documents, period? Follow, I'm sorry. The NTA and the NOH. We should follow where the NTA is filed. That is where the proceedings began and where, if there's no change of venue, which there will, if there's a change of venue, there will be a formal form in the record that says a change of venue has occurred here. So there's no change of venue here, and so where it started is where the NTA is filed is where it's completed. So there's a notice of hearing. There's many notices of hearing in this case that tell the non-citizen to appear in Cleveland, Ohio, virtually, and there's nowhere that says anywhere where the immigration judge is located. It just says that they're appearing virtually. So we don't actually have any record evidence where the immigration judge is located. Every notice of hearing tells a non-citizen to appear in Cleveland, Ohio, virtually, and the NTA was filed in Cleveland, Ohio, and the immigration judge's decision says that this decision is out of Cleveland, Ohio. So I'm, at least for my part, I'm tracking with you so far, but I think this argument sounds a little different than Garcia, which is administrative control courts and so on. I don't care so much about that. I'm just sort of trying to track the statute. Sure, yeah. So it follows with Garcia. So the administrative control court here was the immigration court in Cleveland, Ohio. The administrative control court is something that you established through regulation. It's not as important to me as the NTA and the NOH, which I've linked back to the statute. Right, and matter of Garcia's ultimate holding was that where the NTA is filed is where Venue is, and so they would agree with you. But the statute, the subject of the statute is immigration judge. In the district where, in the circuit where the immigration judge completes the proceeding, not where the proceeding is completed. That was the prior reading, as I understand it, of the statute. Congress amended that, and so when Congress amends a statute, it's a canon of construction that we have to give the amendment meaning. Otherwise, we're just like, so what? We can't do that to Congress. And so it used to be that the proceeding was where everything focused. Now, the immigration judge is central. And so why are we caring about where the docket is or anything else is? It seems singular. It doesn't say where the immigration court is. They could have said that. They tied it to the individual judge. And so why is it that the subject of the statute, the immigration judge, isn't dispositive, like the Fourth Circuit said in Herrera-Oncala? Two responses. I think the operative word, as you noted before, is completes here, and that, we would argue, is ambiguous. But in this virtual day and age, what does it mean to complete? Where is it completed? And this case is actually a perfect example. The immigration judge could have been anywhere in the United States. We don't have any record evidence where the immigration judge was. We just know that they were appearing virtually. So where they completed proceedings is where jurisdiction vested to begin the proceedings. So let me make sure I get this argument. I thought we knew that the immigration judge was doing this from Richmond. Are you positing a circumstance where the immigration judge who ordinarily works in Richmond is on vacation in the Virgin Islands or happens to be, you know, visiting family in Great Falls, Montana? That's right. I think it would be in the United States. France is the stumper, though. Yeah. Because there's not a circuit for France. What, some France circuit? Yes, so the immigration judge does have the opportunity to complete proceedings from home virtually if they're assigned to and can do that. And so the immigration judge's location can move around proceedings to proceedings. Is that to be handled by saying, well, look, logically, immigration judges have a duty station just like third circuit judges do, just like district judges do. They've got a duty station. The judge that did this had a duty station in Richmond, Virginia. So if by happenstance they were in France, it doesn't mean their duty station is France no matter how much they wish it were. It's just still in Richmond, Virginia. And therefore, that location is the location of the immigration judge for legal purposes and under 1252B2, that's the venue spot. In other words, why is Judge Phipps positing about the fourth circuit's law not a perfectly reasonable and maybe the best reading of the statute? Right. Well, even assuming that the immigration judge was in Richmond, Virginia, tying the venue to an immigration judge's location is an unreasonable. Why are we assuming that? I thought that was understood. Is there really a question here? We don't know that this was a Richmond, Virginia judge. We know that they're assigned to Richmond, Virginia, but judges go on detail all the time. They can appear from anywhere virtually. Is this judge's duty station Richmond, Virginia? That's our understanding, but there's no evidence in the record of that. So, yeah, tying the venue to an immigration judge's location is an unworkable model for venue. As I said, they can appear virtually anywhere from the United States. Here, the immigration judge is titled as being issued from Cleveland, Ohio, which is consistent with the hearing notice and the NTA. And it also illustrates the importance as to why venues should not be tied to where the immigration judge is located. It strikes me to say it's unworkable is a little strange because isn't it the government that picks the immigration judge and their duty station? And so it feels like you're saying, gee, we picked the immigration judge from Richmond. It's totally unworkable now to use the location of the immigration judge that we picked. I mean, don't pick that judge then. Right. Well, and the judges can change hearing to hearing and then that's why it creates an unworkable result. But it seems that, I guess what I'm saying is, who's to blame for the unworkability? Right. Like it feels weird when the people in control, the government in control of assigning the immigration judges, then says it's unworkable because of how we do assignments. It feels like maybe the answer is do your assignments differently and it could work. Well, we go back to the statute where they say they completed proceedings. It would make sense for it to create a consistent rule across all levels of jurisdiction for where they completed the proceedings. As the First Circuit said in Brazil, the physical location of the immigration judge during the hearing makes no sense as the basis for judicial venue. As such, an interpretation would lead to an anomaly. You're reading awfully fast. I'm sorry. And I can't keep up with that, Ms. Lees. But I'm not sure. I'm not sure reading your position again is answering the question. So let me ask you, let me put it to you, take one more shot at this. As a logical matter, what makes it more logical to say something is completed where a designated filing spot is, which is not actually even going to get a piece of paper probably. It's going to, maybe I should ask you that directly first. Does anybody ever actually file a piece of paper in Cleveland, Ohio? Or is it just, is this just some ones and zeros in a computer box? Like in Zoolander. It's in the computer. It's in the computer. Like it's just happening in cyberspace. And we said it's Cleveland, Ohio. Is that what's going on here? Or is there really a piece of paper that got filed in Cleveland? And if there is, how do you show us that? Yeah, the notice to appear is a document that then gets filed in the immigration court in Cleveland. You weren't asking about the document here, were you? No, I'm asking about the completion. By saying the notice to appear, I guess you're putting the rabbit back in the hat, which is the thing we're trying to reason through. Even if I gave it to you that the notice to appear is a piece of paper, I mean I'm not even sure that means that that piece of paper gets filed. And then there's some transfer that says it went to Ohio. I'm not even sure that, and I'm not sure you can tell me that. But leaving that aside, there's a completion. Something happens. It's not enough to say it started there. Ergo, it's completed there. That's a logical leap for which there is no justification. You have to somehow, and the First Circuit did it, and Garcia tried to do it. You've got to somehow say where completion is. What is it that makes completion something we should say, that happened in Ohio? Other than the fact that maybe a piece of paper maybe got filed in Cleveland to start it. So here the immigration judge's decision says it was completed in Cleveland, Ohio. The caption of it says Cleveland, Ohio. It's what the immigration judge said. It's whatever that judge said. Well, without a change of venue, their jurisdiction would be the same as where the notice to appear is. So proceedings encompasses the beginning all the way until the completion, until the end. And so the immigration judge is then following what the- Well, I've got to try to get one more shot at this. That's just another way of saying it has to be where it started, that that is what sets venue. Venue is set where we say it's set. And then,  the statute doesn't say venue begins where the notice to appear is filed. It says venue is where the immigration judge completes the proceedings. That's the statutory language. So that's the- I don't know what they're struggling with, but that's what I'm struggling with. Sure. And it doesn't help to say, yeah, but it started in Ohio. Okay. It started in Ohio. And the sky is blue and grass is green.  So tell me how I know, based on the text of the statute, not where the NTA was filed, on the text of the statute, where completion is. And that Ipsy Dixit that it started in Ohio doesn't do it for me. So to turn to the regulation that the agency has to follow, they're bound by their venue provisions in regulation. So in 8 CFR 1003.20a, venue lies in the immigration court or jurisdiction that's pursuant to 100.14. So that is the venue provision that they're applying. And then in 1003.14, jurisdictions that proceedings commence when a charging document is filed with the immigration court. So what you're telling me is, never mind what 12b2 says, look at what the regulation says. Even though the government itself has said, no deference is due here to what the agency is saying. I mean, that's a given. It's acknowledged in the papers. I mean, it's not that we don't pay attention to what folks in government say, but the government's acknowledging the government's position does not do any deference. Does citing to the regulation help us? If the regulation is just an Ipsy Dixit II, how does that move the ball forward? Well, I think the regulation helps the court understand what it means to complete proceedings in 1252b2. How? Because jurisdictions, that's where the charging document was filed. Yes. So I asked a question earlier about the 1996 amendments and how they added the word immigration judge and switched the order of it so it's not all about proceedings. And I'm of the mind that when Congress makes an amendment, that we should probably try to honor that change and not just do business as usual beforehand. But isn't your position, wouldn't your position be the exact same if we were hearing this case in 1995 under the prior version of the statute where it said where the proceeding was completed? You're giving us, you tell us, well, we look at the proceeding. We look at where the NTA was filed. We look at the caption. We see no change of venue. Therefore, that's it. And so my take is that actually might be convincing to me, right, in a pre-1996 world. But we're post-96, and Congress changed that. And so we have to give some meaning, I think, to the injection of the word immigration judge as the subject of a sentence. And so everything about your argument might be a winning argument in 1995. The statute changed in 96. So how can your argument win by accounting for immigration judge, not simply proceeding? And when I've heard about your argument, all of this is proceeding. But that's the old statute. Sure. What in your argument explains and accounts, because we don't want to read words out of a statute. No, no. Right? And so how exactly do you have an interpretation that gives any meaning to the term immigration judge? So it's where the immigration judge completes proceedings. Correct. So the immigration judge, if they're appearing virtually, can complete the proceedings in any location, because it's not where the immigration judge is located that is operative. It's where they complete proceedings. So then the amendment was futile. The amendment achieved nothing. Congress rewrote it in a way that just did nothing, because if it's where the proceeding was all along, that thought was beforehand. So Congress did the change of statute for no reason in 1996. Well, I think Congress didn't have the opportunity to grapple with what does it mean for the immigration judge to complete proceedings virtually. And I think that's what this court has the opportunity to clarify now. In the day and age where— Well, Congress has had that opportunity. It said in 1229A, proceedings may take place in person, where agreed to by the parties, through videoconference or by telephone, right? Correct. Proceedings can occur any of those ways and places. Correct. But I think— When they do, how do we know when they've been completed? Isn't it when the hearing's over? The I.J. in those hearings can administer oaths, receive evidence, interrogate, and so on. He does that wherever he is in the proceeding, which can take place in person, by video, and so on. Right. So where they complete proceedings, then, is tied to where the proceedings are occurring, because they can't just complete proceedings— Question, right? Where are they occurring? In a virtual world, where are they occurring? Exactly. He's got three different places, and you've picked one. Here's another presidential case that no one's talked about yet. It's ours. It's called the Ziga. And in that case, the I.J. was in New York, and the alien was in—no, the alien was in New York, the I.J. was in Arlington. And without much discussion, we, quote, held that venue was appropriate here. What do we do with that case? So in the Ziga, I don't know where the charging document was filed, but New York was an immigration court at that time. And so it would make sense that the completion of the where the non-citizen was located, because York was an immigration court, and, therefore, proceedings could have been tied toward the immigration court. Wait a minute. You're saying, unlike Moe Shannon, which is not an immigration court? Correct. So venue cannot tie to a location that is not an immigration court. Specifically says—well, in the regulations, it says that jurisdiction vests in an immigration court. Venue is tied to an immigration court. Weren't all the—doesn't the administrative record reflect that the documents were all filed in York? In the Ziga? Yeah. Yes. Well, I don't have the administrative record in front of me for the Ziga, but— Well, I took a look, and I think that's accurate. Okay. Then that would be— That actually makes the Ziga kind of easy, right? Yeah. Right. Exactly. Yeah. It's just two locations. Okay. Well, thanks, counsel. Thank you. I appreciate your argument. Thank you. Mr. Winograd, you've got a couple minutes for rebuttal, and that would be your monitor. So, with the court's permission, I would like to address why the court should retain jurisdiction even if determined that venue does not line the circuit. The primary factor that courts consider in cases like these is whether the noncitizen had a valid basis to believe that venue was proper in the circuit where the petition was filed, and we had more than a good faith basis to believe that venue lay in this circuit. Okay. You know, usually we're pretty open with this kind of stuff, but this is supposed to be rebuttal. That's not rebutting anything that was said. Do you have something that you want to say in the way of rebuttal? Sure. With respect to the Ziga, York was both an immigration court and a hearing location. So, in other words, all immigration courts are hearing locations, but not all hearing locations are immigration courts. So, Luziga concisely did not address the specific distinction between immigration courts and hearing locations. So, Luziga, I mean, I would say the board in matter of RCR read Luziga the way we're reading it, but concisely Luziga doesn't address the precise question for the court. Judge Porter, I did want to give Your Honor a statutory citation. Your Honor was referring to statute relating to the beginning of removal proceedings. If you look at 8 U.S.C. Well, it's not just the beginning. It says they take place at this location. Sure. I would point Your Honor to 8 U.S.C. 1229aC1a, and it says, at the conclusion of the proceeding, the immigration judge shall decide whether an alien is removable from the United States. The determination of the immigration judge shall be based only on the evidence produced at the hearing. So, I think Congress contemplated that the completion, immigration judges complete proceedings by determining whether an alien is removable from the United States, or in other words, by issuing a decision ordering them removed, or in some cases, obviously, granting them relief. So, let's say the IJ conducted the proceeding over the Internet, and the proceeding was purported to be located in Cleveland, because that's what the NTA said. So, he took the evidence. He thought about it. He said whatever his conclusion was, you know, so now it's concluded. Why didn't that happen where the proceeding was noticed to occur in the first place? Well, because we think the agency itself regards the hearing as taking place at the hearing location. I recognize in this case that the NTA listed Cleveland, and at least the last hearing notice listed Cleveland, but that's widely inconsistent across different cases. I know it's inconsistent, but isn't it, from a statutory perspective, isn't that cleaner than, you know, the subjective note that an IJ puts on the thing? I'm sitting here in Arlington, and I'm doing this from Phillipsburg, because that's where the guy is. That seems kind of messy to me, and not very precise, and not tied to the statute. Well, I think to the extent that it's messy, it's because it's the agency's fault, not ours. The agency, as these cases show, is not always consistent in how it reflects what the hearing location actually is. Why is it even relevant? Why is it relevant? I think it has to do with the statute that's telling us where the proceedings occur. Well, I think that just begs the question of where do proceedings occur when the agency regards venue as being at one place. I suggest it doesn't beg the question, but you're offering one suggestion. It's wherever the IJ happens to note, you know, in his notes, and I'm suggesting a different one tied to the statute. So one maybe is better than the other, but I don't think it begs the question. Well, I don't know that one is more tied to the statute than the other. Yes? I think we can keep going on this, but we'll keep going on it with the Mohamed case. We have your argument. With your permission, if I could make one very small housekeeping request. Sure. I recognize the court may want to write an opinion explaining why it is or is not transferring the case. We might indeed. I would respectfully request, just given the amount of time it might take, to issue an order forthwith that either transfers the case or does not transfer the case, just so that briefing, with an opinion to follow, just so that briefing on the merits can take place as quickly as possible. All right. Thank you. Thanks. May it please the court, my name is Michael Henry. I represent the petitioner, Shanice Mohamed, and I'd like to address the ambiguous language of where the proceedings were completed. I think it's important to note that this issue came before this court not because of the advent of video conferencing. It's really the closure of the York Immigration Court. Now, the York Immigration Court had administrative control over various hearing locations, all of which are in the Third Circuit, so they had a docket for York, which were in-person hearings. They had a docket for Moshannon, Clinton, Pike, various places. So where a hearing is docketed depends upon, and they separate those dockets out, so when the judge is holding a hearing on the Moshannon docket, it's done by video conferencing. We know. Those were the good old days. Right. So in this case, I think the immigration judge gave us a clue as to how to deal with completed the proceedings when he specifically identified the docketed hearing location, because he may be sitting in Virginia, he may be sitting in Cleveland, and the administrative control over the proceedings may be at any immigration court, but the docket for that hearing is on a particular docket. So that docketed hearing location is an important factor to consider, and it is, in fact, where the proceedings are completed. The immigration judge completes them within the context of that docket at the hearing location because the decisions are generally rendered on the record during the hearing. So when you say generally, that's the problem, right? Because what sounds like the position you're arguing for is venue is going to be different if the judge gives an oral decision or the judge chooses to give a written decision, and that's just the way it is. If I choose to wait and write, that's going to be different than if I choose to announce and ‑‑ But I don't think that changes the docketed hearing location, and I'm not sure that ‑‑ Does the docketed hearing location make a difference if the question is where the proceedings are, quote, completed, unquote? If decision to follow means there's going to be a written decision and it's going to be filed in a file, a file that's designated Cleveland, Ohio, why won't that change where the venue is? Well, I think it's clear that proceedings are initiated in Cleveland, Ohio in these cases, but they're not completed in ‑‑ they're only completed in the context of a hearing. So the docketed hearing location is not something that the judge gets to pick or that the court with administrative control over the case gets to pick. There is a dedicated docket simply for Moshan and cases, and that hearing location, I think, is the only way that we can look at completed ‑‑ where the proceedings are completed, because ‑‑ So if I could just tease this out just in the details. I suspect you're going to know more of these details than I do, but as I understand it, once the NTA happens, then all of a sudden there's a notice of hearing. It's usually a master calendar hearing. Is there a hearing location identified with that kind of first notice of master calendar hearing? Yeah. And is there one in the record here that says, yes, the master calendar hearing is at X location? I think the hearing notices would say the location of the administrative ‑‑ the court with the administrative control over the proceedings, and it will generally say in person or via video conference. So Cleveland here, right? I don't know whether that's what they say, but I think that the hearing notices identify the court with the administrative control over the proceedings. So that's Cleveland for at least the master calendar hearing, right? Well, I'm not sure, because it's on the Moshan and docket. It may be on the Moshan and docket, but it's coming out of ‑‑ it says, the notice of appearance says appear here, Cleveland, and that is where ‑‑ that is the office, at least on the paperwork, where it says things are happening. Correct? I don't know that I would necessarily draw that conclusion. I think that ‑‑ I think the docket location is the defining factor here. I think that's where proceedings actually occur and are completed. The NTA says ‑‑ I mean, the statute says the NTA has to specify the time and place at which the proceedings will be held. And here the NTA says Cleveland, Ohio. To my mind, where the proceedings are held are also where they're completed. Except that the Cleveland court has detained dockets, they have non‑detained dockets, and each one of those, in a non‑detained setting, they would always be in Cleveland, because it's right where the court is. But in detained settings, they can be anywhere. And I think it makes a difference, because it's on a docket, which isn't physically present in the place of the immigration court, that that's the determining factor. That's not something that deviates from case to case, or it's not something that the agency has control over or the judge has control over. It is consistent in each case, the docketed location of the hearing. So can I just ask this question? This is a hypo, but let's just suppose that the IJ in this case was in Cleveland. And so we've got the IJ, we've got the NTA in Cleveland, but we've got a client, your client, in Pennsylvania. In that case, would you say, yeah, okay, both the IJ, both the NTA are in Cleveland. I give that it's got to be Cleveland now, or would you tell us, and the master calendar is set for Cleveland, I assume? Maybe there's an individual, should we look to some individual hearing notice that would be different than Cleveland, that we would view as changing the location of where the IJ is going to complete the proceedings possibly? I mean, but if the IJ is in Cleveland, then it would feel very weird to me to say, well, I've got a hearing docket somewhere else, because the statute says where the IJ completes the proceedings. I think where the judge is located is merely a matter of convenience. The judge doesn't have to be a member of the Cleveland Immigration Court. He can be a member of the Philadelphia Immigration Court sitting because there's no one available, or he's covering a hearing for someone else. So I don't think the location of where the judge hears the case, especially if it's on video, is necessarily important here. Can the judge change? I mean, this was mentioned in the earlier argument. Do cases get reassigned within a single case so that you might have... From judge to judge? Yeah, from judge to judge. You've got an immigration judge appearing from Richmond for one hearing. The hearing is continued. Then you've got an immigration judge from Philadelphia for the next one. The hearing is continued. Then you've got an immigration judge from Cleveland at the next one. That's the one that has actually the hearing. Does that happen? It definitely happens, but the one constant that remains is which docket it's on. And if it's on the Moshannon docket... Well, isn't it potentially the case that the one consistent is that where the hearing is to be held is always Cleveland, Ohio, because that's what the NTA says and that's what the statute declares? Well, in a detained setting, they're never held in Cleveland because the respondent isn't there. So the place where the... And it's not necessarily where the respondent is because the... In this case, the judge specifically stated on the record in his decision that the docketed hearing location was at Moshannon. And so that's not something that he arbitrarily chose or that can change from case to case. He's assigned to the Moshannon docket. He may have... But I might not have understood. With the answer to my question, though, yes, the immigration judge can change in just the way I've said. As a matter of course, that could happen. And often does, yes. Judges are interchanged very often on cases. In the same case? Within the same case, yes, within one hearing to the next. However, the location of that judge, if it's different, shouldn't dictate the outcome of where the case is completed. You'd say the Fourth Circuit position is faulty because the immigration judge can change? I mean, I'm trying to get... Different courts have tried this different ways. So it sounds like what you're saying is the Fourth Circuit got it wrong because the fact that immigration judge 1 was in one place doesn't mean in the very same case you're not going to get immigration judges 2, 3, and 4, and they could be in all different places. Well, I think this court... Well, that was a question. So is that your legal position? Yeah, I believe that the Fourth Circuit law that the judge applied in this case when he determined what choice of law to make was incorrect. Okay. I mean, the virtue of the Fourth Circuit's opinion, though, is that the statute says the immigration judge completed the proceedings, and the Fourth Circuit really tried hard to give meaning to the word immigration judge and not to pretend it never was there and just focus on proceedings. And so you said that it shouldn't be where the immigration judge is. That makes kind of sense at one level. But if the statute overrides that and says we're going to do it where the immigration judge completes proceedings, why shouldn't our focus be where the immigration judge is? It might be a bad idea. But it was... At one level, it was Congress's bad idea. And so why shouldn't we follow what Congress said, good idea or bad idea, when they made the subject of that sentence immigration judge? And it seems that you don't want us to pay attention to the location of the immigration judge at all. I think that's correct. I think because the immigration judges are interchangeable and their locations can vary, that it would be arbitrary, which would be the proper venue, which law would apply, things like that. But at one level, that strikes me as a policy problem. And if Congress wants that policy and the interchangeability, it could almost be like a carousel. You know what I mean? Oh my goodness, you've just got Taos immigration judge. You've got Del Rio immigration judge. You've got Birmingham immigration judge. If Congress just thought, for whatever reason, that that's the way this should go down, and they said that in a statute, I mean, do we have much flexibility there? Well, I think in order to interpret the statute in a way which makes sense and which is consistent and fair to all the parties and isn't merely chaos, is to select some fact that anchors the proceedings at a particular location. And I think the only thing that makes sense and the only thing that is consistent and is not subject to the whims of the administrative court or the judge or whatever is the docketed hearing location. And that's something that... Does that control for forum shopping by the government? Well, you mean in terms of the forum shopping in the circuit court? Yeah. I asked Mr. Winograd early in the argument, and Ms. Lees too, I believe. I tried to maybe... I didn't miss one of them. But to ask, is it problematic to just say in a virtual world the hearing proceeds wherever you, the government, say it proceeds? Because you can file an NCA anywhere. If it's all virtual, you can say appear in Anchorage when you're in prison in Moshannon Valley. Because you really, really like the Ninth Circuit law and what you're going to get up there. And that may be a choice of... And the same sort of problem, policy issue, arises if you take the Fourth Circuit's approach because they can pick an immigration judge from Anchorage if they feel like it. But are you arguing that it's different if it's a detention kind of a thing or even if it's not a detention thing, if it's a person who lives in Philadelphia and they notice it for Anchorage, there would be some due process issues. It controls for forum shopping. That's the question I'm putting to you. Yeah, I think the government to some extent can forum shop by where they choose to detain somebody because up until the closure of York and transfer to administrative control outside the circuit, I don't think this issue would have arisen very often. But I think that the courts looked at it or the government looked at it as far as the law that's going to apply, the circuit court law that's going to apply is going to be based upon where the person is detained. Okay, I've got you. Thanks. May it please the court, Jacqueline Hagner on behalf of the Attorney General. I'll be responding to questions in regards to the case of Mohamed. Why don't you start where we ended with Mr. Henry. What's the control for just rank forum shopping by the government if it's got the power to choose where the NTA is filed? It's the same in Mohamed, I think, as it is in Castillo. There's no connection between Ms. Mohamed and Cleveland, Ohio, is there? No, Your Honor. Okay, so the government just said Cleveland. Could have said Anchorage, could have said Birmingham, could have said Del Rio, could have just said anything. It said Cleveland. Why isn't that just an invitation to forum shopping? So I agree that the primary concern of this court is forum shopping. And I don't disagree that it seems somewhat arbitrary. Not really arbitrary. She has no connection to Cleveland at all. And certainly the immigration judge in Richmond had no connection to Cleveland at all. The government just said Cleveland. Now, it's true it might be the closest to Moshannon. I don't know. But that was the government's choice, and it could have chosen someplace else. So it certainly seems arbitrary. Why isn't that a problem? Before I can say that it was completely arbitrary, I would like to point out that Motion Valley was connected to the Cleveland Immigration Court in the sense that that's where the agency says that whoever is detained at Motion Valley, your immigration proceedings are immigration. All I want to point out, Your Honor, it's not that we're randomly picking an immigration court. It's public knowledge to a certain extent. But beyond that, I think your larger concern is, again, the forum shopping. On the forum shopping point, don't all roads lead to the potential for forum shopping? So you can pick the NTA anywhere, the government can. You can detain somebody anywhere. And if we go with the Four Circuits approach, you can put the IJ who completes the proceeding anywhere you want. So I guess my thought is, I'm trying to think of a scenario where the government can't forum shop. And it strikes me that in every scenario the government can forum shop. I guess we're just supposed to say, thank you for publishing how you're going to do it in advance. Thank you for trying to make it generally applicable when you take Shannon Valley and put it in Cleveland. It looks like you haven't tried to put too much weight on the scale. Thank you for picking an IJ in Richmond. You probably did that for a reason. It wasn't totally forum shopping. I guess we're just supposed to say, thanks. You've got the ability to forum shop at every possible alternative, any possible option of reading the statute. It seems like the government has that. We're just supposed to say, thanks, that's good government. Right. Again, I'm not going to disagree with our structure of how we did this before in terms of connecting Cleveland, Ohio, and the motion in Valley, and all the discretion that the government has. That's, quite frankly, normal. It's prosecutorial discretion. The government is allowed to file an NTA where it was. And again, I think that's true. But in the previous regime, before virtual hearings, if you wanted to forum shop, you had to put the person where you wanted. Now you can put the person where it's, in fact, convenient and might make sense, but you can pick any place for the law. Right. But petitioner can also request a change of venue for good cause. That's true. The petitioner can, but that doesn't really answer the question. I would like to understand your question a little better, Your Honor. Would you mind repeating it, what your concern is there? Yeah, the question is, isn't it problematic as a policy matter to allow the government to pick its location in a virtual world just by saying, appear there? We've run through that. Do you have a different position, and I'm doubting it, from Hisley's on where the venue does lie? No, Your Honor, I don't. So I will not waste this court's time. We are on the same page and have the same argument that venue lies in the Sixth Circuit, in Mohammed as well as in Castillo. Let me just hear it one more time then. Why is the hearing completed by the EIJ in Cleveland? Right. I don't think I have a better answer for you than what Ms. Lee has offered. So, again, I will not reiterate. Basically, the proceedings began in Cleveland, Ohio, because that's where the NTA was filed. I'm not saying that that is a great solution. It is the best solution, and that's what the zeal did. It's not just that they began there. It's where the proceedings took place, right? Correct. Correct. And they have to take place in an immigration court because that's… As a legal matter, you're saying they took place. As a legal matter. As a factual matter, we know nothing happened in Cleveland except maybe the filing of the paper. Nothing happened in Cleveland in this case. This is all… Right. Right, because, well, you can't file the papers at a detention center, Your Honor. Again, I'm not saying that this is a great approach to everything, but this is how we have established how we do things. How does the approach… I mean, again, I asked your colleague, this might be a winning argument in 1995, but Congress redid the statute. And so it feels to me like you're coming with a version that pays no heed to the phrase immigration judge. You're focused only on proceedings. And Congress changed the statute to say immigration judge. Is there anything about your interpretation that accounts for the location of the immigration judge? Right. So I understand your point, Your Honor, that the subject of that sentence is the immigration judge, and that is your concern. What I would just add is that I don't think you can look at that sentence narrow-mindedly and just focus on I.J. I do think you have to do what Bazille did, and also look at the word completed, and just fully just recognize that in today's world, completed is ambiguous when we do remote proceedings. So basically what you're saying is we should look at… So if I complete your thought for you, what you're saying is the immigration judge is the subject. If the subject were quarterback, and we were looking at where they completed a pass, we wouldn't say they completed the pass where they started to throw it. They completed it where somebody caught it. And so I guess what you're saying is you can account for the word immigration judge by the definition of the word completed that transfers the completion process to the location of proceedings, so that even with the amendment, the term proceeding is what we're going to focus on. Is that the best you can do? Yes. I don't want to go down the road of your hypothetical or analogy to football. I'm not great at football, but my understanding is if somebody were to catch a pass, it would be at a different location than where it was thrown. Would there be a change of venue, though? I just don't know if that's a great analogy here, because if there is a change of venue, then that changes everything. But I was doing that metaphor to kind of help your cause. We can do a wire transfer as well. This was a good one for you, I think. But if it's not football, it's a wire transfer, and you say we complete the wire transfer where the person receives it. I guess what I'm saying is if we said it will be the location where the immigration judge completes the wire transfer, right? Something like this. You could say, well, when was it completed? Was it completed when they went to the bank and gave all the routing numbers and stuff like this? Or was it completed in that separate location where the wire was actually received and the money went through? And so in that case, we'd be looking at where the wire landed, not really where the immigration judge was when they started it. And so I'm saying it's a way to read in the phrase immigration judge, but then focus on a location other than his or her physical location. You see what I'm saying? Does that work better? I do understand. I do think the analogy is still tougher a little bit. Let's do the football analogy this way because I think it's closer to what we have. Let's say it's not a football game on grass. It's a video game. And you or wherever you live are playing, and I'm playing wherever I live in Pittsburgh. And our kids do this. They play these games against strangers around the country, and it's all online. Where does the quarterback complete the pass in that scenario? I'm just going to follow my story here. Honestly, I don't know. I don't follow the football analogy in terms of completing the passes, and I don't think I can help you there. How about this? It's not a video game. No. Let's leave all that aside for a second. Would you agree that this is an issue that is unlikely to arise in the future because of the change that the OIR has implemented, which appears, if I understood Mr. Winograd correctly, there's been a statement that is we're going to have the immigration court that's responsible be within the same geographic location as where the people are. Maybe I misunderstood it, but is that the way it is? I think I understand everything you just said. In other words, the Oceana Valley docket, as Mr. Henry has put it, is now under the control of Elizabeth, New Jersey. It's going to be third-circuit law. And that's true in every circuit around the country now. Have I got that correct? Yes. So the sort of foreign shopping stuff that I've been hitting on and trying to drag answers out, that shouldn't be an issue moving forward, and it shouldn't be too much of a concern as we wrap these cases up. Is that a fair way for us to be thinking about it, or are these policy issues still things that we have to be concerned about? Yes, Your Honor, and I see my time has expired, and your question actually leads to my summation, which is that I agree with you that this problem is very unlikely to arise again. Obviously I cannot promise anything, but clearly the agency has tried hard to fix this problem, which kind of undermines any argument that the government is trying to foreign shop here. They're trying to fix this problem. And if I may add information, just one thing that has not been discussed by other counsel before you today has been what would happen if this court were to retain jurisdiction and apply Third Circuit law. I think what should be a major concern for this court is that Third Circuit law would be applied for the first time at the appellate level in both of these cases, which offends, violates, and is just quite clearly inappropriate to litigation strategy. When you walk into court as a litigator, you should know what law controls for the day you walk in, and that's what this rule in Brazil and Garcia ensures. Don't you think everybody really wants Third Circuit law when it comes right down? Third Circuit law is a great law, Your Honor. I agree. For the foregoing reasons and the reasons on our pleadings, yes. Thank you very much. Just very briefly, the way this worked before is that the trial counsel were located in York, Pennsylvania. They're still located in York, Pennsylvania. We're all familiar with Third Circuit law. Yes, I think the desirable outcome would be to not upset the apple cart and start learning about other circuits' laws and having the attorneys address those issues for various circuits. But I would say for our case, it's a matter of pure statutory interpretation. There's no outstanding precedent that I'm aware of in any circuit, so you're just going to want to apply the normal principles of statutory interpretation and reach an outcome that probably any circuit would reach in my case. Thank you. Thank you very much. We appreciate counsel's argument today.